**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 18-CR-00728 |
| v. | |
| ROMEO BLACKMAN, TERRANCE SMITH, JOLICIOUS TURMAN, and NATHANIEL MCELROY | Judge John Robert Blakey |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

On January 24, 2019, a grand jury returned a superseding indictment against Defendants Romeo Blackman, Terrance Smith, Jolicious Turman, and Nathaniel McElroy, charging them with racketeering conspiracy in violation of 18 U.S.C. § 1962(d), and eleven other related counts in violation of 18 U.S.C. §§ 1959 and 924(c). [56]. This matter comes before the Court on Defendants' motions to sever, [183], [200], [201], [203]; the Government's *Santiago* proffer and motion to admit evidence, [224]; Defendant Smith's motion to transfer, [232]; and Defendants' motions to dismiss, [236], [237], [239]. The Court has considered the parties' written submissions, as well as oral arguments at the severance motion hearing held on June 22, 2021. By prior order, this matter remains set for trial at 10:00 a.m. on May 15, 2023.

I.    **Motions to Sever**

First, the Court considers Defendants' motions to sever, [183], [200], [201], [203]. Defendants Smith, McElroy, and Turman ask this Court to try them each individually, while Defendant Blackman asks the Court to sever Count Two from the remainder of the superseding indictment. As explained below, this Court denies Defendants Smith, McElroy, and Turman's motions to sever, and Blackman's motion remains under advisement pending further briefing.

When, as here, multiple counts or claims against multiple defendants are properly joined under Federal Rule of Criminal Procedure 8(b), Rule 14 gives the trial court discretion to address the potential for any prejudice that may result.[1] Fed. R. Crim. P. 8(b) (If the joinder of offenses or defendants in an indictment "appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."). *See also United States v. Garner*, 837 F.2d 1404, 1412 (7th Cir. 1987) ("Once the Rule 8 requirements are met by the allegations in the indictment, severance thereafter is controlled entirely by Federal Rule of Criminal Procedure 14."); *United States v. Diaz*, 876 F.2d 1344, 1357 (7th Cir. 1989) (same).

The discretion Rule 14 affords is broad. As the Seventh Circuit held in *United States v. Rollins*, Rule 14 leaves the "determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." 301 F.3d

---

[1] Here, the parties do not dispute proper joinder under Rule 8(b), and instead dispute the issue of severance under Rule 14.

511, 517–18 (7th Cir. 2002) (internal citations and quotations omitted). In fact, "Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 506 U.S. 534, 538–39 (1993). The Supreme Court further instructed in *Zafiro* that a district court should grant a severance under Rule 14 "only if there is a serious risk" that a joint trial would "compromise a specific trial right of one of the defendants" or would "prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

The Seventh Circuit has outlined several circumstances where sufficient prejudice might lead to a severance: "(1) conflicting and irreconcilable defenses; (2) a massive and complex amount of evidence that makes it almost impossible for the jury to separate evidence as to each defendant; (3) a codefendant's statement that incriminates the defendant; and (4) a gross disparity of evidence between the defendants." *United States v. Clark*, 989 F.2d 1490, 1499 (7th Cir. 1993).

Defendants Smith, Turman, and McElroy invoke the fourth circumstance—a gross disparity of evidence—and each rely heavily upon the concept of "spillover evidence" in their motions to sever, cautioning the Court that evidence of the other defendants' alleged misdeeds will unfairly skew the jury's perspective as to each in turn. Citing *Zafiro*, each defendant points to the limited number of crimes where he is alleged to have participated personally, thus contrasting his culpability with that of the others, and raising a "heightened" risk of prejudice. *Zafiro*, 506 U.S. at 539.

3

While "spillover evidence" is no doubt a useful concept in certain contexts, Defendants' reliance on it here is misplaced. In a prosecution under 18 U.S.C. § 1962, evidence of the means and methods employed by an association-in-fact enterprise is not "spillover" evidence—instead, it goes to the very heart and nature of the conspiracy in which each Defendant is charged with participating. Because the superseding indictment charges each individual defendant with being a member of the RICO conspiracy, the "vast majority, if not all, of the evidence admitted in the joint trial would [be] admissible [if the defendant were to be] tried alone." *United States v. Delatorre*, 522 F. Supp. 2d 1034, 1046-47 (N.D. Ill. 2007) (citing *United States v. Souffront*, 338 F.3d 809, 831 (7th Cir. 2003) (alterations in original)). The fact that certain members of the conspiracy, and not others, committed particular acts in furtherance of the conspiracy does not detract from the relevance and admissibility of that evidence against each member, because it goes to the pattern and practice of the criminal enterprise. As the Seventh Circuit articulated in *United States v. O'Malley*, under RICO, it is "irrelevant that each defendant participated in the enterprise's affairs through different and unrelated crimes" and even though the defendants used different means, the indictment still alleges that "each participated in the same offense: furtherance of the enterprise." 796 F.2d 891, 895 (7th Cir. 1986) (internal citations omitted). Evidence of the enterprise, the enterprise's various predicate objectives, and the various acts in furtherance, all remain admissible as direct evidence against all four defendants, and thus, the record presents no spillover, or other gross disparity, warranting a severance.

Moreover, for severance to be appropriate, defendants must demonstrate a "serious risk" that a joint trial will "compromise a specific trial right" or "prevent the jury from making a reliable judgment concerning guilt or innocence." *Zafiro,* 506 U.S. at 539. Here, Defendants Smith, Turman, and McElroy have failed to demonstrate that the evidence against them in a joint trial will prejudice any such right or impair the jury's decision-making. Indeed, numerous federal courts across the nation have conducted similar RICO trials before juries without compromising the fairness or integrity of the proceedings. Based upon the record, Defendants Smith, Turman, and McElroy's motions to sever are denied.

Defendant Blackman moves to sever Count Two of the superseding indictment from the remaining counts, invoking another of the *Clark* scenarios: the risk of unfair prejudice that might stem from conflicting and irreconcilable defenses. *See United States v. Clark*, 989 F.2d at 1499. Defendant Blackman's motion also offers to tender Sealed Exhibit A, [202], to the government to underscore his challenge. Based upon the issues presented, the Court invites Defendant Blackman to do so if he wishes by 12/30/22 and directs the Government to consider this exhibit and file an amended reply by 1/20/23. Defendant Blackman's motion to sever [201] remains under advisement pending the filing of an amended reply.

## II.     Motions to Dismiss

In Count One, the superseding indictment charges Defendants with conspiring to engage in a variety of racketeering predicate acts through an enterprise known as the Goonie/Goonie Boss gang, in violation of 18 U.S.C. § 1962(d). Three of the

5

defendants moved to dismiss Count One, arguing it fails to sufficiently allege the "enterprise" element of a RICO conspiracy, [236], [237], [239].

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to be a plain, concise, definite written statement of the essential facts constituting the offense charged. An indictment must: (1) state all the elements of the crimes charged; (2) adequately inform the defendant of the nature of the charges so that he may prepare a defense; and (3) allow a defendant to plead the judgment as a bar to any future prosecutions. *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010). Federal Rule of Criminal Procedure 12(b)(3)(B) permits a defendant to move to dismiss an indictment for failure to state an offense—Defendants Blackman, Smith, and Turman have done so here.

When analyzing a motion to dismiss, allegations in the indictment are accepted as true, and the motion to dismiss is "not a means of testing the strength or weaknesses of the government's case, or the sufficiency of the government's evidence." *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009).

To establish a RICO conspiracy, the government must show: "(1) an agreement to conduct or participate in the affairs (2) of an enterprise (3) through a pattern of racketeering activity." *United States v. Olson*, 450 F.3d 655, 664 (7th Cir. 2006). Here, Defendants argue the superseding indictment fails to allege an "enterprise."

The statutory definition of an enterprise includes "any group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has further described an "association-in-fact" enterprise as a "group of persons

6

associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 944–45 (2009). The existence of such an enterprise can be proved by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* at 945.

Defendants argue that the alleged Goonie Enterprise lacks "any structure independent from its underlying criminal activity," positing that the government's failure to allege hierarchical structure and economic motivation dooms the superseding indictment. [236].

Despite purporting to apply the controlling *Boyle* standard, Defendants ignore its essential guidance: an enterprise need not have any structural features beyond "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. As the Supreme Court explained:

> [A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose. Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an *ad hoc* basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.

7

*Id.* at 948. In short: RICO contains no hierarchy requirement, at the pleading stage or anywhere else.

Contrary to Defendants' assertions, the superseding indictment sufficiently alleges all that *Boyle* requires: purpose, relationships, and longevity. The Goonie Enterprise's alleged purposes include "acquiring, preserving, and protecting the power, territory, operations and proceeds of the enterprise," and "enriching the leaders, members, and associates through a pattern of racketeering activity," among others. [56] at 2–3. The superseding indictment lays out the relationships between members of the enterprise, including the Defendants. For example, the superseding indictment alleges that Blackman acted as a leader; Smith and Turman "directed and participated" in the enterprise's activities through various means including murder and attempted murder; and McElroy provided firearms to the enterprise. [56] at 3–4. Having set forth the purposes of the enterprise, the relationship between each Defendant and the enterprise, and the longevity of the enterprise (identifying racketeering acts spanning 2014 to 2018), the superseding indictment's allegations, taken as a whole, exceed what *Boyle* requires.

Defendants also argue that the enterprise allegations remain insufficient because the alleged "purposes" of the enterprise overlap with the alleged "means and methods." But these two concepts naturally relate; the means tailored to serve the ends described. Further, the Supreme Court has already answered the question of whether such overlap threatens the sufficiency of an indictment, instructing that "evidence used to prove the pattern of racketeering and the evidence establishing an

8

enterprise may in particular cases coalesce." *Boyle*, 556 U.S. at 947. Once again, the superseding indictment remains sufficient.

Defendants further argue that the superseding indictment fails to plausibly allege that the enterprise had an impact on interstate commerce. 18 U.S.C. § 1962 limits its applicability to "any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Paralleling this statutory language, the superseding indictment describes "the Goonie Enterprise, which engaged in, and the activities of which affected, interstate commerce." [56] at 4. As the Government correctly argues in response, this language—general as it may be—is all that is required at the pleading stage. As set forth above, an indictment need only: (1) state all the elements of the crimes charged; (2) adequately inform the defendant of the nature of the charges so that he may prepare a defense; and (3) allow a defendant to plead the judgment as a bar to any future prosecutions. *United States v. White*, 610 F.3d at 958. Here, the superseding indictment alleges an impact on interstate commerce, and Defendants make no persuasive argument that either of the latter *White* requirements compel further detail in the indictment itself, nor have they otherwise set forth any purported inability to defend or to assert double jeopardy in the future.[2]

---

[2] While the Seventh Circuit has not explicitly addressed the matter, numerous other circuits have found generic language sufficient in this context. *See, e.g. United States v. Diecidue*, 603 F.2d 535, 547 (5th Cir. 1979) ("[A]n explicit discussion of the enterprise's effect on interstate commerce would contribute virtually nothing to defendants' understanding of the nature of the offenses charged."); *United States v. Doherty*, 867 F.2d 47, 68 (1st Cir. 1989); *United States v. Fernandez*, 388 F.3d 1199, 1218 (9th Cir. 2004) (RICO indictment "need not set forth facts alleging how interstate commerce was affected, nor otherwise state any theory of interstate impact" because "RICO prosecutions require a showing of only a *de minimis* effect on interstate commerce."). *See also United States v. Kaye*, 586 F.

9

Defendants' remaining arguments are frivolous,[3] or otherwise involve the sufficiency of the evidence which constitute questions for a jury to decide. As such, the Defendants' motions to dismiss are denied.

### III. Santiago Proffer and Motion to Admit Evidence

Under well-settled precedent, the Government filed a proffer, [224], seeking to admit co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E) and *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978). Of course, Rule 801(d)(2)(E) permits the admission of co-conspirator statements under the hearsay rule and *Santiago* permits this Court to conditionally admit the co-conspirator declaration evidence "before the conspiracy has been independently established, but subject to the subsequent fulfillment of that critical condition" at trial. *Id.* at 1130-31; *United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009); *United States v. Harris*, 585 F.3d 394 (7th Cir. 2009).

Under *Santiago*, the government must show by a preponderance of the evidence that the purported co-conspirator statements meet three requirements: "(1)

---

Supp. 1395, 1399 (N.D. Ill. 1984) (finding that in the RICO context, "for purposes of the indictment, it is enough to track the statutory language" with regard to interstate commerce).

[3] As part of his motion, Blackman seeks dismissal based upon the non-economic nature of the crimes. To the extent that this argument demands that a RICO enterprise must involve an economic motive, Defendants would do well to revisit *National Organization for Women v. Scheidler*, 510 U.S. 249 (1994), where the Supreme Court soundly rejected that notion. Likewise, Defendant Smith attempts to invalidate the RICO statute itself with unfounded policy arguments. According to Smith, the RICO prosecution before the Court is part of a pattern of prosecutions that disproportionately target racial minority groups. But Smith fails to identify any valid legal mechanism to support dismissal in this case—failing, for example, to articulate any plausible theory of selective or vindictive prosecution under Rule 12(b)(3)(A)(iv). Smith's conclusory allegations of systemic racism, without more, provide no factual or legal basis to invalidate RICO in general or dismiss the superseding indictment in particular.

a conspiracy existed; (2) defendant and the declarant were members of the conspiracy; and (3) the statement was made during the course and in furtherance of the conspiracy." *United States v. Cruz-Rea*, 626 F.3d 929, 937 (7th Cir. 2010). When considering the question of whether a conspiracy existed, this Court may consider the co-conspirator statements themselves as evidence of the conspiracy. *See Bourjaily v. United States,* 483 U.S. 171, 181 (1987).

Here, the Government filed an extensive proffer, detailing the nature of the conspiracy and providing summaries and examples of the evidence they intend to introduce at trial. Only one of the four defendants argues that the Government has failed to make the requisite showing that it will later prove the existence of a conspiracy by the preponderance of the evidence at trial. The other three defendants contest the proffer only as applied to specific co-conspirator statements, arguing that certain statements were not, in fact, made in furtherance of the conspiracy.

Specifically, Defendants object that the Government has identified categories of statements and provided examples rather than proffering a complete inventory of the co-conspirator statements it intends to introduce. In *McClellan*, however, the Seventh Circuit held that the government's *Santiago* proffer need not list out each and every co-conspirator statement. *United States v. McClellan*, 165 F.3d 535, 553 (7th Cir. 1999). Instead, the Seventh Circuit there emphasized the trial court's discretion in this area, stating:

> As we pointed out in *United States v. Rodriguez*, 975 F.2d 404, 409–10 (7th Cir. 1992), relying on our holding in *Santiago* setting forth that there is more than one acceptable procedure which the district court may rely on in determining whether the hearsay is admissible:

11

> One method we have expressly approved... is to make a preliminary determination, based on Government proffers of evidence, whether to conditionally admit the statements subject to a reevaluation at trial if the Government fails to provide evidence supporting the assertions contained in the proffer. However, [w]e have also approved other procedures a district court can employ in making the preliminary admissibility determination required by *Santiago*, including the following: the court can rule on each statement as it is elicited based on the evidence the Government has adduced to that point; the court can, even in the absence of a pretrial proffer, conditionally admit the body of coconspirator's statements subject to the Government's eventual proof of the foundational elements (the penalty for not so providing being a possible mistrial); or the court can hold a "full blown" preliminary hearing to consider all evidence concerning the statements. *United States v. Andrus*, 775 F.2d 825, 836–37 (7th Cir. 1985) (we discouraged the latter as inefficient and potentially duplicative).

*Id.*

As noted in its proffer, the Government expects the evidence to show the involvement of each of the four Defendants in repeated activities of the Goonie Enterprise. The proffer sets forth a coherent narrative that stands uncontradicted at this stage. Exercising its discretion under *Santiago*, the Court conditionally finds the existence of a conspiracy involving each defendant under Rule 801(d)(2)(E), of course, subject to later proof of the *Santiago* factors by a preponderance of evidence at trial.[4]

---

[4] Defendant Turman alone challenges the sufficiency of the proffered evidence to make the threshold showing of a conspiracy, arguing that none of the social media posts implicate him personally and that the testimony of co-conspirators to cooperating witnesses is insufficient to establish a conspiracy of which he was a part. [240]. Based upon the Government's proffer, this Court finds the requisite existence of a conspiracy involving the Defendants and others, and hereby overrules Turman's objection at this point in the proceedings.

This Court, however, cannot admit, on a pretrial basis, every individual statement based upon the current record, because the Government has not listed them in full. In the exercise of discretion, this Court directs the Government to file a supplemental disclosure on or before January 13, 2023, identifying the precise coconspirator statements it intends to introduce at trial. This disclosure need not reproduce the statements verbatim, but rather it may take the form of a list of precise citations to the tendered discovery with a description of the declarant and how each specific statement was made during and in furtherance of the conspiracy. With the benefit of this prior notice, Defendants can, if needed, raise timely objections to the admissibility of specific statements offered by the government under Rule 801(d)(2)(E) via trial-related motions in limine, which can be addressed at the pretrial conference. To this degree, the Government's *Santiago* motion, [224], remains under advisement.

### IV. Motion by Terrance Smith to Transfer to MCC

Defendant Smith moves this Court to order the U.S. Marshals to transfer Smith from the Jerome Combs Detention Center in Kankakee, Illinois, to the Metropolitan Correction Center in Chicago to be detained there pending trial. [232]. Smith cites lack of proper medical care at his current facility as the reason for this request. As the Government properly notes, the Court does not have the authority to order such a transfer at this time, and for the present, the decision as Defendant Smith's location rests with the U.S. Marshals. *See* 18 U.S.C. § 4086. The Court thus denies Smith's motion without prejudice. This Court orders, however, that the

Government file a status report by January 13, 2023, apprising the Court of any ongoing disputes or issues regarding Defendant Smith's requests for medical care.

## V.     Conclusion

For the reasons set forth above, the Court denies Defendants Smith, Turman, and McElroy's motions to sever, [183], [203], and [200]. Defendant Blackman's motion to sever, [201], remains under advisement. Based upon the issues presented, the Court invites Defendant Blackman to tender Sealed Exhibit A to the Government by 12/30/22 and directs the Government to file an amended reply by 01/20/23. Regarding the Government's *Santiago* proffer and motion to admit evidence, [224], which also remains pending in part, the Government shall file a supplemental disclosure on or before 01/13/2023 as set forth above. The Court also denies Defendant Smith's motion to transfer, [232], but directs the Government to file a status report by 01/13/2023 apprising the Court of any ongoing disputes regarding Defendant Smith's requests for medical care.

Date:  December 8, 2022

ENTERED:

_____
John Robert Blakey
United States District Judge